IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

---

| | |
|---|---|
| SIP SHINE LLC, | Case No. 2:24-cv-147 |
| Plaintiff, | Honorable |
| v | |
| LAWSON'S FINEST LIQUIDS, LLC, | **COMPLAINT FOR APPEAL AND *DE NOVO* REVIEW OF DECISION OF TRADEMARK TRIAL AND APPEAL BOARD AND FOR DECLARATORY JUDGMENT** |
| Defendant. | |

Plaintiff Sip Shine LLC ("**Sip Shine**" or "**Plaintiff**") alleges as follows for its complaint against Defendant Lawson's Finest Liquids, LLC ("**LFL**" or "**Defendant**"):

**NATURE OF ACTION**

1. This is an action under Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), seeking review of a final decision (the "**Decision**") of the Trademark Trial and Appeal Board (the "**TTAB**"), an administrative agency of the United States Patent and Trademark Office ("**USPTO**"), in an *inter partes* cancellation proceeding brought by LFL.

2. In the Decision, a copy of which is attached as Exhibit A, the TTAB granted LFL's petition to cancel Sip Shine's USPTO trademark registration for the standard character mark SIP SHINE (SHINE disclaimed) for "alcoholic beverages, namely moonshine," in International Class 33.

3. Section 21(b)(1) of the Lanham Act, 15 U.S.C. § 1071(b)(1), permits a dissatisfied party to appeal a TTAB *inter partes* cancellation decision to a federal district court with jurisdiction rather than to the Federal Circuit. *See also* 37 C.F.R. 2.145(c). In such an action, all legal conclusions made by the TTAB are reviewed *de novo*, and the law applied is that of the

{03422397 2 }

Circuit where the district court sits. The plaintiff in the action is also entitled to plead new related claims so that all disputes regarding cancelation of a registration can be decided in a single action. Thus, in addition to appealing the Decision, Sip Shine seeks a judicial declaration that LFL has no other legal basis for cancelation of Sip Shine's trademark registration.

## PARTIES

4. Plaintiff Sip Shine is a Michigan limited liability company with a principal place of business located at 140 Monroe Center NW, Suite 400, Grand Rapids MI 49503.

5. Defendant LFL is a Vermont limited liability company with a principal place of business located at 155 Carroll Rd., Waitsfield, VT 05673.

## JURISDICTION AND VENUE

6. This is an action arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Declaratory Judgement Act. 28 U.S.C. §§ 2201, 2202.

7. This court has subject matter jurisdiction under (a) 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §§ 1119 and 1121 because this is an action arising under the laws of the United States and it involves a mark registered under the Lanham Act; (b) 15 U.S.C. § 1071(b)(1) because this action seeks review of a TTAB decision; and (c) under 28 U.S.C. §§ 2201 and 2202 because Sip Shine seeks a declaration of rights regarding an actual case and controversy between the parties.

8. This Court has general personal jurisdiction over LFL because it is a Vermont limited liability company that conducts continuous and systematic business in Vermont.

9. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1).

## **PROCEDURAL HISTORY**

10. On May 20, 2014, LFL filed U.S. Application Serial No. 86/286,491 with the USPTO for the mark SIP OF SUNSHINE IPA ("**LFL's Mark**") for "beer".

11. On January 13, 2015, the USPTO issued U.S. Trademark Registration No. 4,670,665 for LFL's Mark ("**LFL's Registration**").

12. On April 29, 2019, Sip Shine filed U.S. Application Serial No. 88/406,694 ("**Sip Shine's Application**") with the USPTO for the mark SIP SHINE ("**Sip Shine's Mark**") for "alcoholic beverages, namely, moonshine".

13. On July 24, 2019, the USPTO issued a Nonfinal Office Action with respect to Sip Shine's Application stating that "[t]he trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d)," and requesting that Sip Shine disclaim the word "SHINE" as descriptive, as it "is a known slang term for moonshine."

14. Sip Shine agreed to the USPTO's requested disclaimer on December 10, 2019.

15. On January 13, 2020, LFL submitted with the USPTO a Combined Declaration of Use and Incontestability under Sections 8 & 15 of the Trademark Act.

16. The USPTO published Sip Shine's Application for opposition on January 14, 2020.

17. No oppositions to Sip Shine's Application were filed during the opposition period.

18. On March 7, 2020, the USPTO issued a Notice of Acceptance Under Section 8 and Notice of Acknowledgement for LFL's Registration under Section 15.

19. On November 3, 2020, the USPTO issued U.S. Trademark Registration No. 6,190,705 for the SIP SHINE Mark ("**Sip Shine's Registration**").

20. On November 13, 2020, LFL filed with the TTAB a Petition to Cancel Sip Shine's Registration.

21. Sip Shine filed an Answer to LFL's Petition on December 22, 2020, and the parties engaged in discovery and motion practice before filing evidence and trial briefs with the TTAB.

22. The TTAB issued its Decision on June 13, 2023, in which it granted LFL's cancellation request, finding that there was likelihood of confusion among consumers as to the source or origin of the parties' products.

23. On July 13, 2023, Sip Shine timely filed a request for reconsideration of the Decision, which LFL opposed.

24. On December 8, 2023, the TTAB issued an order denying Sip Shine's request for reconsideration.

25. Sip Shine has timely filed this appeal within 63 days of the TTAB order denying Sip Shine's request for reconsideration.

## FACTUAL BACKGROUND

### *LFL's Mark and Craft Beer Products*

26. LFL brews and sells craft beer.

27. LFL does not produce or sell alcoholic seltzers, but speculates that it may do so in the future.

28. LFL'S Mark is used in connection with a specific beer that LFL brews and sells.

29. The ingredients of the beer sold under LFL's Mark are water, malt, hops and yeast.

30. The beer sold under LFL's Mark is classified as an India Pale Ale and has an alcohol by volume content of 8%.

31. The acronym IPA is an abbreviation for the phrase "India Pale Ale."

32. The logo associated with LFL's Mark, which is reproduced below, includes an icon representing a shining sun.



33. In recent years, LFL has used a variety of "sunshine" marks in connection with its craft brewery beers, including DOUBLE SUNSHINE IPA and TRIPLE SUNSHINE IPA.

34. LFL also sells beer under the name LITTLE SIP.

35. LFL distributes its beer in approximately ten states that are primarily located in the northeast U.S.

36. LFL advertises its products within the niche market for craft beer, through websites and magazines for craft-beer enthusiasts.

37. LFL's Mark has been in use for approximately eight years.

### *Sip Shine's Mark and Moonshine Products*

38. Sip Shine sells Moonshine manufactured according to its proprietary recipes.

39. Moonshine is a high-proof unaged clear corn whiskey that represents a tiny fraction of the US whiskey market.

40. The Moonshine sold under Sip Shine's Mark is manufactured at 97% ABV/193.7 proof, and then distilled down to 20% ABV/40 proof before sale.

41. The moonshine products currently available under Sip Shine's Mark come in the following flavors: Arnold Shine (lemonade/tea), Razz-Berry Shineade, Watermelon Chillade,

Carmel Apple Shinelatte, ShineBerry Sweat Tea, Granny Jayne's Pumpkin Bread Shinelatte, and Peppermint Mocha Shine-O.

42. Sip Shine's moonshine products are sold to the general public at retail stores and directly to bars, restaurants, and other licensed sellers.

43. In retail stores, Sip Shine's moonshine products are typically placed alongside other whiskeys, separate and apart from beer and canned cocktails.

44. Upon information and belief, retailers do not place Sip Shine's moonshine product in coolers with craft beers or canned cocktails, and consumers of the SIP SHINE product do not look in coolers for the product.

45. In bars and restaurants, the SIP SHINE product is primarily used as a base for mixed drinks served to customers, or is sold in a slushie form.

46. In bars and restaurants, Sip Shine's moonshine products, and mixed drinks incorporating Sip Shine, are listed on spirits and cocktail menus, not on beer menus.

47. Sip Shine also sells and installs SIP SHINE slushie machines.

48. Approximately 90-95% of Sip Shine's on-site business in bars and restaurants relates to sales of slushies.

49. Sip Shine slushies are available in 750 locations including bars, restaurants, and sporting/event venues.

50. Sip Shine slushies have become the main driver of the company's brand recognition.

51. Sip Shine's moonshine products are almost exclusively sold in plastic bottles ranging in 50 ml, 750 ml, and 1.75 ml quantities, to facilitate use in mixed drinks and slushies.

52. Although Sip Shine used to sell its moonshine in 200 ml cans, production of new orders of SIP SHINE in cans ended in May 2022.

53. Sip Shine was not aware of LFL's Mark prior to adopting the SIP SHINE name, and in fact did not even become aware of the mark until receiving a demand letter from LFL.

54. Upon information and belief, no consumer, distributor, or third party has ever confused Sip Shine's products with LFL's products or thought they were related in any way.

55. LFL has previously admitted that it has no evidence of confusion between the parties' respective products or marks.

56. Sip Shine coined the SIP SHINE mark based on its connotation and relationship with moonshine and how people typically drink moonshine given its high alcohol content.

57. Sip Shine's development of its logo, which is reproduced below, does not depict the sun, and the theme was not developed in reference to the sun.



58. The Sip Shine logo connotes a "bursting" "loud" and "shouting" effect while incorporating historical aesthetics.

59.     When the SIP SHINE mark is in use in logo form on product packaging, the color of the diamond design and the mark itself varies depending on the product flavor.

## COUNT I

### REVERSAL AND VACATUR OF THE TTAB DECISION AND CANCELLATION ORDER

### U.S.C. § 1071(B)(1) AND C.F.R. § 2.145)

60.     Plaintiff incorporates and realleges all of the preceding allegations as if restated in their entirety herein.

61.     Count 1 seeks review of the TTAB Decision, reversal of that Decision, and vacatur of the TTAB's order of cancellation.

62.     The TTAB's erred in finding that there is a likelihood of confusion between the SIP SHINE and SIP OF SUNSHINE IPA marks.

63.     Sip Shine is dissatisfied with the TTAB Decision and its erroneous findings of fact and conclusions of law.

64.     The TTAB erroneously found the marks were similar by ignoring or giving insufficient weight to the differences between the SIP SHINE and SIP OF SUNSHINE IPA marks.

65.     The TTAB erred in giving excessive weight to the alleged trade dress similarities between the parties' products when LFL's cancellation petition challenged Sip Shine's standard character mark.

66.     The TTAB erroneously referenced and relied upon outdated trade dress and packaging in reaching its conclusion that the marks projected a confusingly similar commercial impression.

67.     The TTAB erred in giving no weight or insufficient weight to the stylistic differences between the current trade dress associated with the parties' respective marks.

8

68. The TTAB erroneously gave no weight to the fact that Sip Shine's product names, e.g. "Razz-Berry Shineade," "Arnold Shine," and "Shine Berry Sweet Tea," clearly convey to the consumer that the goods are moonshine.

69. The TTAB erroneously failed to take the parties' entire product packaging, marketing, and trade dress into proper consideration, including background, color, design, additional wording, and graphics, and improperly dissected the trade dress to focus on features with alleged similarities to support its ultimate conclusion.

70. The TTAB erroneously concluded that the parties' respective marks, used in association with their respective products, give a similar commercial impression.

71. The TTAB erroneously failed to compare the sight, sound, and meaning of the parties' respective marks as a whole.

72. The TTAB erroneously failed to give weight to the inclusion of the word "IPA" on LFL's Mark, and the likelihood that such inclusion will cause the consumer to differentiate and distinguish between the parties' respective products and marks.

73. The TTAB erroneously failed to mention and compare the distinguishable sounds of the parties' respective marks.

74. The TTAB improperly disregarded relevant case law and authoritative guidance in establishing that third-party marks that incorporate similar terms with similar products demonstrate a mark's weakness.

75. The TTAB erroneously concluded there was insufficient evidence for a determination on whether Defendant's SIP OF SUNSHINE IPA mark was strong or weak.

76. The TTAB erroneously ignored or gave insufficient weight to a significant number of additional third-party uses of Sip-formative marks for alcoholic beverages.

77. The TTAB erroneously ignored or gave insufficient weight to substantial evidence supporting a finding that both craft beer and moonshine enthusiasts were sophisticated purchasers.

78. The TTAB erroneously concluded that the probative value of evidence provided by LFL in a prior proceeding and in an appeal brief regarding the sophistication of craft brew drinkers was low.

79. The TTAB erroneously concluded that the parties' respective products move through similar channels of trade.

80. There are errors in the TTAB's finding regarding similar trade channels where the evidence relied upon by the TTAB in support of such finding does not relate to Sip Shine's moonshine, but rather, to distinguishable third-party products.

81. The TTAB erroneously relied on inapposite caselaw regarding the trade channels for beer to establish actual trade channels for Sip Shine's product.

82. The TTAB erroneously concluded that both parties' presence on social media weighed in favor of a finding that the products were related.

83. The TTAB erroneously concluded that the parties' respective products were related.

84. The TTAB erroneously concluded that there was evidence that moonshine and beer are related.

85. The TTAB erroneously disregarded established authority stating that alcoholic beverages are not automatically related products.

86. The TTAB erred in finding that the parties' products were related where LFL did not provide any evidence showing moonshine and beer emanating under a single mark or being complementary products.

87. The TTAB erred in concluding that Plaintiff's products were "canned cocktails," despite the fact that "canned cocktails" are typically low-ABV beverages, and where there are federal size restrictions which mean that ready-to-drink cocktails cannot come any larger than 12 oz containers.

88. The TTAB erred in its evaluation of consumer perception relating to the parties' respective marks.

89. The TTAB made erroneous presumptions, unsupported by the record evidence, and that conflicted with record evidence submitted by Sip Shine, about how consumers would perceive the parties' respective marks, stating, among other "because neither identification is limited to a particular price point, we must presume that the goods include inexpensive beer and moonshine that ordinary customers may purchase on impulse."

90. The TTAB erred in finding, without supporting record evidence, that alcohol is often ordered by name, that consumers often do not see a label, and that consumers ordering Sip Shine's product would use "only the name of alcohol . . . in this case SIP SHINE."

91. The TTAB erred in finding, in the face of contradictory record evidence, that consumers would likely confuse Sip Shine's mark as another extension of LFL's mark because LFL offered several different types of goods such as Koozies, hats, shirts, etc.

92. The errors described herein, and others, all contributed to the TTAB erroneous ultimate conclusion that there was a likelihood of confusion between the parties' respective marks.

93. Updates to the evidence before the TTAB, and additional evidence, will be presented at the trial *de novo* before this Court in further support of a conclusion that there is no likelihood of confusion between the SIP SHINE and SIP OF SUNSHINE IPA marks.

## COUNT II

### DECLARATORY JUDGMENT OF NONINFRINGEMENT

94. Plaintiff incorporates and realleges all of the preceding allegations as if restated in their entirety herein.

95. There is an actual, present and justiciable controversy between the parties regarding whether Plaintiff's use of the SIP SHINE mark is likely to cause confusion, mistake or deception with respect to LFL's Mark.

96. Plaintiff seeks a declaration from this Court that LFL's SIP OF SUNSHINE IPA mark is weak.

97. Plaintiff seeks a declaration from this Court that the products sold under Plaintiff's SIP SHINE mark and Defendant's SIP OF SUNSHINE IPA mark are not related.

98. Plaintiff seeks a declaration from this Court that there has been no actual confusion between Plaintiff's SIP SHINE mark and Defendant's SIP OF SUNSHINE IPA mark.

99. Plaintiff seeks a declaration from this Court that the trade channels for Plaintiff's SIP SHINE mark and Defendant's SIP OF SUNSHINE IPA mark do not overlap.

100. Plaintiff seeks a declaration from this Court that Plaintiff's and Defendant's respective customers are sophisticated and can discern between the parties respective' products.

101. Plaintiff seeks a declaration from this Court that there is no likelihood of confusion between Plaintiff's SIP SHINE mark and Defendant's SIP OF SUNSHINE IPA mark.

102. Plaintiff seeks a judicial declaration that LFL has no legal basis for cancelation of Sip Shine's Registration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A. Reverse the Decision of the TTAB, pursuant to 15 U.S. C. § 1071(b);

B. Remand to the TTAB with instructions to deny Defendant's petition to cancel Sip Shine's Mark;

C. Declare that there is no likelihood of confusion between Sip Shine's Mark and LFL's Mark;

D. Declare that LFL has no legal basis for cancelation of Sip Shine's Registration or injunction of Sip Shine's continued use of the SIP SHINE mark;

E. Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,

Dated: February 9, 2024            **GERBEN PERROTT, PLLC**

/s/ Kathryn G. Kent

Kathryn G. Kent, Esq.
*Local Counsel for Plaintiff*
1233 Shelburne Rd, Suite 203
South Burlington, VT 05403
VT BAR #4455
802-498-7167
kkent@gerbenlawfirm.com

Jennifer A. Puplava
Daniel J. Broxup
*Counsel for Plaintiff*
*Pro hac vice pending*
Mika Meyers PLC
900 Monroe Avenue NW
Grand Rapids, MI 49503
Tel: 616-632-8000
jpuplava@mikameyers.com
dbroxup@mikameyers.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    /s/ Kathryn G. Kent
_____

Kathryn G. Kent, Esq.
*Local Counsel for Plaintiff*
VT BAR #4455
802-498-7167
kkent@gerbenlawfirm.com

{03422397 2 }